LAURA A. STOLL (SBN 255023)
LStoll@goodwinlaw.com
**GOODWIN PROCTER** LLP
601 South Figueroa Street, 41st Floor
Los Angeles, CA 90017
Tel.: +1 213 426 2500
Fax: +1 213 623 1673

DAVID R. CALLAWAY (SBN 121782)
DCallaway@goodwinlaw.com
**GOODWIN PROCTER** LLP
601 Marshall Street
Redwood City, CA 94063
Tel.: +1 650 752 3100
Fax: +1 650 853 1038

Attorneys for Defendant:
BANK OF AMERICA, N.A.

[*ADDITIONAL COUNSEL LISTED IN SIGNATURE BLOCK*]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION (LOS ANGELES)

| | |
|---|---|
| KUANG TING CHONG and STEPHANIE MOORE, individuals,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A., a Delaware corporation; and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 2:20-cv-10052-FLA-RAO<br><br>**DEFENDANT BANK OF AMERICA'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO 12(B)(1) AND 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    Friday, June 25, 2021<br>Time:    1:30 p.m.<br>Dept:    6B<br>Judge:   Hon. Fernando L. Aenlle-Rocha<br><br>Filed/Lodged Concurrently with:<br>1. Request for Judicial Notice;<br>2. Declaration of Shane M. Daniels;<br>3. Declaration of Robert Chestnut; and<br>4. [Proposed] Order |

# <u>TABLE OF CONTENTS</u>

Page

MEMORANDUM OF POINTS AND AUTHORITIES..............................................1

INTRODUCTION ...................................................................................................1

BACKGROUND .....................................................................................................3

I.     EDD Retained Bana to Provide Debit Cards to Recipients of California
       Unemployment Benefits.................................................................................3

II.    Security Protections for EDD Debit Cards and Accounts ..............................4

III.   The COVID-19 Pandemic Resulted in Unprecedented Levels of
       Unemployment and Widespread Fraud...........................................................6

IV.    Plaintiffs Chong and Moore ..........................................................................8

LEGAL STANDARD ..............................................................................................9

ARGUMENT..........................................................................................................10

I.     Plaintiffs Fail to State a Negligence Claim (Count 1) ..................................10

       A.  The Economic Loss Doctrine Precludes Plaintiffs' Negligence Claim...10

       B.  The First Amended Complaint Alleges no Facts to Support a Tort Law
           Duty Owed by Bana to Plaintiffs ............................................................11

               1.     There is No Duty To Provide EMV Chips .................................11

               2.     Plaintiffs Have Not Alleged any Duty Outside of the Parties'
                      Contract........................................................................................12

       C.  Any Harm to Plaintiffs was Caused by Third Party Criminal Actors .....13

II.    Plaintiffs Have Not Stated a Claim Under the California Consumer Privacy
       Act (Count 4).................................................................................................14

III.   The Breach of Contract Claim Fails (Count 3) ............................................15

       A.  The Court Lacks Subject Matter Jurisdiction ..........................................15

       B.  Plaintiffs Have Not Adequately Alleged a Breach or Damages..............17

IV.    Plaintiffs Have Not Stated a Claim for Breach of Implied Duty of
       Competence (Count 5)...................................................................................18

V.     Plaintiffs' EFTA Claim is Moot Because the Plaintiffs Have Been Credited
       for the Fraudulent Charges (Count 2) ..........................................................20

VI.    Plaintiffs Have Not Stated a Claim Under the Unfair Competition Law
       (Count 6)........................................................................................................21

CONCLUSION.......................................................................................................23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alecia Ballin v. Russ Bassett Corp. & Insperity PEO Servs.*,
   No. 17-CV-3981 PSG, 2017 WL 10527368 (C.D. Cal. Dec. 6,
   2017) ................................................................................................21

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
   7 Cal. 4th 503 (1994) .........................................................................13

*Arris Grp., Inc. v. British Telecomms. PLC*,
   639 F.3d 1368 (Fed. Cir. 2011) .........................................................16

*Asarco LLC v. Shore Terminals LLC*,
   No. C 11-01384 WHA, 2011 WL 6182123 (N.D. Cal. Dec. 13,
   2011).....................................................................................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................9, 12

*Baba v. Hewlett-Packard Co.*,
   No. C 09-05946 RS, 2010 WL 2486353 (N.D. Cal. June 16, 2010) ................22

*Barvie v. Bank of America, N.A.*,
   No. 18-CV-449-JLS (BGS), 2018 WL 4537723 (S.D. Cal. Sept. 21,
   2018)...........................................................................................2, 11, 24

*Becker v. Skype Inc.*,
   No. 5:12-CV-06477-EJD, 2014 WL 556697 (N.D. Cal. Feb. 10,
   2014).............................................................................................16, 17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................9, 12

*Biakanja v. Irvin*,
   49 Cal. 2d 647 (1958) .........................................................................12

*Blaylock Grading Co., LLP v. Smith*,
   189 N.C. App. 508, 658 S.E.2d 680 (2008) .......................................17

*Bulletin Mktg. LLC v. Google LLC*,
  No. 17-CV-07211-BLF, 2018 WL 3428562 (N.D. Cal. July 13,
  2018) ................................................................................................. 18

*Campos v. Fresno Deputy Sheriff's Association*,
  441 F. Supp. 3d 945 (E.D. Cal. February 27, 2020 ) ........................ 16

*Defeat The Beat, Inc. v. Underwriters At Lloyd's London*,
  194 N.C. App. 108, 669 S.E.2d 48 (2008) ........................................ 17

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ............................................................... 9

*Epstein v. Wash. Energy Co.*,
  83 F.3d 1136 (9th Cir.1996) ................................................................. 9

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) .......................................................................... 16

*FW/PBS, Inc. v. City of Dallas*,
  493 U.S. 215 ...................................................................................... 16

*Giron v. Hong Kong & Shanghai Bank Co., Ltd.*,
  No. 2:15-CV-08869-ODW-JC, 2016 WL 6662726 (C.D. Cal. June
  29, 2016) ............................................................................................ 22

*Glenn-Colusa Irrigation Dist. v. United States Army Corps of Eng'rs*,
  No. 2:17-CV-120 WBS CKD, 2019 WL 3231748 (E.D. Cal. July
  18, 2019) ............................................................................................ 19

*Goonewardene v. ADP, LLC*,
  6 Cal. 5th 817 (2019) ................................................................... 11, 12

*Green Crush LLC v. Paradise Splash I, Inc.*,
  No. SACV1701856CJCJDEX, 2018 WL 4940824 (C.D. Cal. Mar.
  8, 2018) .............................................................................................. 20

*Gunn v. Thrasher, Buschmann & Voelkel, P.C.*,
  982 F.3d 1069 (7th Cir. 2020) ........................................................... 21

*Hatteras/Cabo Yachts, LLC v. M/Y EPIC*,
  423 F. Supp. 3d 181 (E.D.N.C. 2019) ............................................... 17

*Johnson v. Sprint Solutions, Inc.*,
  No. 3:08-CV-00054, 2008 WL 2949253 (W.D.N.C. July 29, 2008)............... 18

*Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*,
  315 F. App'x 603 (9th Cir. 2008) ........................................................ 10

*Lewis v. Continental Bank Corp.*,
  494 U.S. 472 (1990) ................................................................. 15, 16

*Lopez v. Apple, Inc.*,
  No. 19-CV-04577-JSW, 2021 WL 823122 (N.D. Cal. Feb. 10,
  2021) ................................................................................. 22

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................... 9, 15, 16

*Lusinyan v. Bank of Am.*,
  No. CV-14-9586 DMG (JCX), 2015 WL 12777225 (C.D. Cal. May
  26, 2015) ............................................................................. 10

*Meineke Car Care Ctrs., Inc. v. RLB Holdings, LLC*,
  No. 3:08CV40-RJC, 2009 WL 2461953 (W.D.N.C. Aug. 10, 2009),
  *rev'd and remanded on other grounds*, 423 F. App'x 274 (4th Cir.
  2011) ................................................................................. 19

*Naik v. HR Providence Rd., LLC*,
  190 N.C. App. 822, 662 S.E.2d 36 (2008) ............................................. 17

*Oates v. Jag, Inc.*,
  314 N.C. 276, 333 S.E.2d 222 (1985) ................................................. 18

*Performance Sales & Mktg., LLC v. Lowe's Companies, Inc.*,
  No. 5:07CV140, 2010 WL 2294323 (W.D.N.C. June 4, 2010) .......................... 19

*Powell v. McCormack*,
  395 U.S. 486 (1969) ................................................................. 15

*Rezapour v. Earthlog Equity Grp., Inc.*,
  No. 5:12CV105-RLV, 2013 WL 3326026 (W.D.N.C. July 1, 2013) ................... 19

*Ruiz v. Gap, Inc.*,
  380 F. App'x 689 (9th Cir. 2010) ..................................................... 11

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) ......................................................... 3

*Smith v. Visa U.S.A., Inc.*,
  No. C 11–01634 SI, 2011 WL 2709819 (N.D. Cal. July 12, 2011) .................. 10

*St. Clair v. City of Chico,*
  880 F.2d 199 (9th Cir. 1989) ........................................................... 9

*Starr v. Baca,*
  652 F.3d 1202 (9th Cir. 2011) ......................................................... 9

*Steinle v. City & Cnty. of San Francisco,*
  919 F.3d 1154 (9th Cir. 2019) ......................................................... 5

*Tarasoff v. Regents of Univ. of California,*
  17 Cal. 3d 425 (1976) ........................................................... 13, 14

*Hawaii Laborers Pension Fund ex rel. THQ, Inc. v. Farrell,*
  No. CV0606935ODW(FMOX), 2007 WL 5255035 (C.D. Cal. Aug.
  23, 2007) ........................................................................................... 3

*U.S. Parole Comm'n v. Geraghty,*
  445 U.S. 388 (1980) ...................................................................... 9, 15

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.,*
  903 F. Supp. 2d 880 (C.D. Cal. 2012) ........................................... 22

*Widjaja v. JPMorgan Chase Bank,*
  No. CV 19-7825-MWF-AFM, 2020 WL 2949832 (C.D. Cal. Mar.
  31, 2020) ................................................................................... 10, 11

**Statutes & Regulations**

15 U.S.C. § 1693a(12)(B) .................................................................. 7

15 U.S.C. § 1693b (2018) ................................................................. 20

15 U.S.C. § 1693f(a) ........................................................................... 7

15 U.S.C. § 1693f(c) ........................................................................... 7

15 U.S.C. § 1693g ............................................................................. 21

15 U.S.C. § 1693g(a) ........................................................................ 20

31 U.S.C. § 5311 ................................................................................. 4

Cal. Civ. Code § 1798.81.5(b) ......................................................... 14

Cal. Civ. Code § 1798.81.5(c) ......................................................... 14

Cal. Civ. Code § 1798.100(e) ................................................................. 14

**Other Authorities**

12 C.F.R. § 205 ...................................................................................... 20

12 C.F.R. § 1005.2(m) ............................................................................. 7

12 C.F.R. § 1005.6 ................................................................................. 21

12 C.F.R. § 1005.6(b) ............................................................................ 20

12 C.F.R. § 1005.11(c) ............................................................................ 7

Bank of America, EDD Debit Card,
    https://visaprepaidprocessing.com/EddCard ...................................... 5

Ca. Empl. Dev. Dep't, *Debit Card FAQS*,
    https://edd.ca.gov/About_EDD/FAQs_The_EDD_Debit_Card.htm .................. 3

Ca. Empl. Dev. Dep't, *Pandemic Unemployment Assistance*,
    https://edd.ca.gov/about_edd/coronavirus-2019/pandemic-
    unemployment-assistance.htm .......................................................... 6

Ca. Empl. Dev. Dep't, *Unemployment Insurance Benefits: What You
    Need to Know*, https://www.edd.ca.gov/pdf_pub_ctr/de1275b.pdf .............. 3

*California Unemployment Fraud Could Top $9 Billion, Double
    Previous Estimate, Expert Warns*
    https://www.latimes.com/california/story/2021-01-
    15/unemployment-benefit-fraud-california-billions-edd ..................... 1

*CA EDD Admits Paying as Much as $31 Billion in Unemployment
    Funds to Criminals*, ABC7 News (Jan. 25, 2021),
    https://abc7news.com/california-edd-unemployment-fraud-ca-
    scam-insurance/10011810/ ............................................................. 1

*EDD Provides Updates on Unemployment Benefit Fraud and Fraud
    Prevention Efforts* (Jan. 25, 2021),
    https://edd.ca.gov/about_edd/pdf/news-21-05.pdf ........................... 8

*Legis. Analyst's Office, Legislative Oversight of Ongoing Challenges
   at EDD* (Jan. 26, 2021),
   https://lao.ca.gov/handouts/state_admin/2021/EDD-Challenges-
   012621.pdf ............................................................................................... 7

*Update: Outrage Mounts After Bank of America Denies Claims from
   Victims of EDD Bank Card Scammers*, CBS Local News (Nov. 9,
   2020), https://sanfrancisco.cbslocal.com/2020/11/09/outrage-
   mounts-after-bank-of-america-denies-claims-from-victims-of-edd-
   bank-card-scammers/ ............................................................................ 5

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on Friday, June 25, 2021, at 1:30 p.m., or as soon as thereafter as counsel may be heard, in Courtroom 6B, 6th Floor, of the United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, California, 90012, before the Honorable Judge Fernando L. Aenlle-Rocha, defendant Bank of America, N.A. ("BANA" or "Bank of America"), will, and hereby does, move to dismiss the First Amended Complaint under Fed. R. Civ. Proc. 12(b)(1) and 12(b)(6).

The Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the Declaration of Shane Daniels, the Declaration of Robert Chestnut, Request for Judicial Notice, all papers from this case on file with the Court, all other matters of which the Court may take judicial notice, any further evidence or argument offered to the Court at the hearing on this Motion, and any other matters that the Court may consider.

This Motion is made following the conferences of counsel pursuant to L.R. 7-3, which took place on January 13, 2021 and April 22, 2021.

Dated:   April 30, 2021                    Respectfully submitted,

By: /s/ *Laura A. Stoll*
LAURA A. STOLL (SBN 255023)
*LStoll@goodwinlaw.com*
**GOODWIN PROCTER** LLP
601 601 South Figueroa Street, 41st Floor
Los Angeles, CA 90017
Tel.: +1 213 426 2500
Fax: +1 213 623 1673

DAVID R. CALLAWAY (SBN 121782)
*DCallaway@goodwinlaw.com*
**GOODWIN PROCTER** LLP
601 Marshall Street
Redwood City, CA 94063
Tel.: +1 650 752 3100
Fax: +1 650 853 1038

JAMES W. MCGARRY (*pro hac vice*)
jmcgarry@goodwinlaw.com
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel.: +1 617 570-1000
Fax: +1 617 523 1231

THOMAS M. HEFFERON (*pro hac vice*)
thefferon@goodwinlaw.com
**GOODWIN PROCTER LLP**
1900 N Street, N.W.
Washington, DC 20036
Tel.: +1 202 346 4000
Fax: +1 202 346 4444

BARRY W. LEE (SBN 088685)
bwlee@manatt.com
**MANATT PHELPS & PHILLIPS LLP**
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
Tel.: +1 415 291 7450
Fax: +1 415 291 7474

Attorneys for Defendant:
BANK OF AMERICA, N.A.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant Bank of America, N.A. ("BANA" or "Bank of America"),
respectfully submits this Memorandum of Points and Authorities in support of its
Motion to Dismiss.

**INTRODUCTION**

This case arises as a result of the massive fraud targeting California's
unemployment benefits program that surged under the COVID-19 pandemic.  At a
time when millions of unemployed Californians were relying on government
assistance, legions of criminals were exploiting this unprecedented crisis to target
the state agency providing that assistance, the California Employment Development
Department ("EDD"), by filing fraudulent unemployment benefits claims.  First
Amended Complaint ("FAC") ¶ 19.  The responses to this wholly-unexpected crisis
are the subject of this suit.  Unemployment benefits in California are administered
by EDD, which retained BANA in 2010 to distribute those benefits through prepaid
debit cards issued by BANA.  As the First Amended Complaint acknowledges
(FAC ¶ 19), frauds perpetrated on the unemployment program exploded in mid-
2020.  EDD has called the type and level of fraud a "criminal assault on the benefits
system," and public reports suggest the deep involvement of sophisticated overseas
criminal gangs, "money mules," users of the "dark web," prison inmates and other
malevolent groups and individuals seeking to take advantage of federal and state
responses to the current health and employment crisis—to the tune of up to $31
billion of dollars of outright theft.[1]

BANA has taken many steps to combat this unprecedented surge of criminal

---

[1] *See* Patrick McGreevy, *California Unemployment Fraud Could Top $9 Billion,
Double Previous Estimate, Expert Warns*, L.A. Times (Jan. 15, 2021, 2:29 PM),
https://www.latimes.com/california/story/2021-01-15/unemployment-benefit-fraud-
california-billions-edd; *CA EDD Admits Paying as Much as $31 Billion in
Unemployment Funds to Criminals*, ABC7 News (Jan. 25, 2021),
https://abc7news.com/california-edd-unemployment-fraud-ca-scam-
insurance/10011810/.

activity, including working with EDD and other State officials to identify and freeze accounts that likely belong to the criminals who have defrauded EDD, and denying cardholder claims that appear to represent further attempts to defraud the system.  Some of the measures taken to respond to these widespread crimes have unfortunately and unavoidably impacted legitimate cardholders.

BANA is both aware of and deeply sympathetic to the plight of cardholders whose accounts were incorrectly identified as suspicious or who experienced fraudulent charges on their legitimate accounts.  That is why BANA offers measures such as automatic reconsiderations for claim denials, which is not required by any law or contract.  Notably, even Plaintiffs acknowledge that BANA's actions are not for any illicit profit motive but rather intended to stem fraud, stop theft, and distribute funds to unemployed persons who need it.  FAC ¶¶ 19-20.  As evidenced by Plaintiffs' own experiences, BANA has worked to restore funds to legitimate accounts.  These processes take time, however, especially given the constant threat of renewed fraud.

Plaintiffs allege that they made a claim to BANA that their cards had been compromised and money stolen and that BANA initially responded by crediting the stolen funds back to their accounts, but later debited their accounts by the amount of the prior credit.  FAC ¶¶ 20, 23, 25–26, 31, 34.  The First Amended Complaint neglects to mention, however, that when BANA reversed the credit it informed each of Mr. Chong and Ms. Moore that it had done so and told them they had the opportunity to reopen those decisions and provide additional information to BANA if they disagreed with the action.  Declaration of Shane M. Daniels in Support of Defendant's Motion to Dismiss the First Amended Complaint  ("Daniels Decl."), Exs. 1 & 2.[2]  Plaintiffs Chong and Moore began that reopening process, but their

_____

[2] These letters were expressly referenced in the First Amended Complaint. *See* FAC ¶ 39.  "On considering a motion to dismiss, judicial notice of the full text of documents referenced in a complaint is proper under the doctrine of incorporation

lawyers sued BANA before the process was concluded.  Daniels Decl. ¶¶ 7–8.

Although Plaintiffs' lawyers filed this suit prematurely, BANA nonetheless

continued its process of reviewing Plaintiffs' reopened claims, which BANA then

granted and paid on December 1, 2020 (Moore) and December 10, 2020 (Chong),[3]

and both Plaintiffs have had all of the subject funds back in their accounts since

early December.  Daniels Decl. ¶¶ 9–10, Exs. 3 & 4.

Against this backdrop, Plaintiffs' claims lack both equitable and legal merit,

and, for the reasons discussed below, each of them should be dismissed.

## BACKGROUND

## I.  EDD RETAINED BANA TO PROVIDE DEBIT CARDS TO RECIPIENTS OF CALIFORNIA UNEMPLOYMENT BENEFITS

In 2010, EDD retained BANA to distribute unemployment benefits, through

prepaid debit cards (to those who elect to not receive a paper check) to individuals

whom EDD determined to be eligible for benefits.[4]  Pursuant to its contract with

EDD, BANA has issued EDD Debit Cards to millions of recipients identified by

EDD.

Each EDD Debit Card is sent to the cardholder with a California

Employment Development Department Debit Card Account Agreement ("Account

Agreement"), and the cardholder agrees to be bound by its terms and conditions

by reference."  *Hawaii Laborers Pension Fund ex rel. THQ, Inc. v. Farrell*, No.
CV0606935ODW(FMOX), 2007 WL 5255035, at *3 (C.D. Cal. Aug. 23, 2007).
[3] These letters, annexed to the Daniels Decl., are submitted in support of BANA's
facial attack on subject matter jurisdiction and thus may be considered on a motion
to dismiss.  *See Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir.
2004).
[4] A claimant has the option to choose how to receive their benefits and can choose
to receive them by paper check.  Ca. Empl. Dev. Dep't, *Unemployment Insurance
Benefits: What You Need to Know* 6,
https://www.edd.ca.gov/pdf_pub_ctr/de1275b.pdf (last accessed Apr. 30, 2021);
Ca. Empl. Dev. Dep't, *Debit Card FAQS*,
https://edd.ca.gov/About_EDD/FAQs_The_EDD_Debit_Card.htm (last accessed
Apr. 30, 2021).

when they use or allow another to use their card.  Declaration of Robert Chestnut in Support of Defendant's Motion to Dismiss the First Amended Complaint ("Chestnut Decl.") Ex. 1.  Each EDD Debit Card accesses an account that is funded by EDD.  FAC ¶ 13; *id.* §§ 1, 2.  The cardholder then can use the moneys loaded on the EDD Debit Card as it would any other Visa debit card.  Chestnut Decl. Ex.1, § 3.

## II.    SECURITY PROTECTIONS FOR EDD DEBIT CARDS AND ACCOUNTS

The Account Agreement expressly permits BANA to take the initiative to prevent fraud.  Among other terms, the Account Agreement states BANA may "freeze" accounts if it "suspect[s] irregular, unauthorized, or unlawful activities may be involved" (Chestnut Decl. Ex. 1, § 2); may restrict access to any prepaid debit card if BANA notices suspicious activity (*id.*); or may deduct from an account funds that a cardholder is not entitled to keep (*id.*).  These rights are consistent with BANA's numerous obligations under federal law, including under the Bank Secrecy Act, to monitor and report fraudulent and suspicious activity.  *See* 31 U.S.C. § 5311 *et seq.*

BANA has also taken many steps to educate cardholders on ways to avoid fraudulent activity.  Each EDD Debit Card is associated with a personal identification number ("PIN").  The Account Agreement advises cardholders: "[D]o not write your PIN on your Card or carry your PIN with you.  This reduces the possibility of someone using your Card without your permission if it is lost or stolen."  Chestnut Decl. Ex. 1, § 10.

A BANA webpage dedicated to EDD Debit Card users contains a section called "Avoiding Fraud" that provides further security information to cardholders:

> Sometimes criminals will try to trick individuals into disclosing personal information in a text, email or on a phone call.  Phony emails may direct you to a fraudulent website that looks like a

1             Bank of America website.  These phony emails may even ask

2             you to call a phone number and provide account information.[5]

3  The webpage further informs cardholders, among other things, not to disclose "any

4  personal information," including the PIN, to anyone, and to avoid persons

5  impersonating BANA who attempt to obtain information from them.  *Id*.

6         BANA's EDD Debit Card webpage provides cardholders with a Bank e-mail

7  address (abuse@bankofamerica.com) to which cardholders may report suspected

8  fraud regarding their EDD Debit Cards.  *Id*.  Additionally, the Account Agreement

9  includes an "Error Resolution" section that gives benefit recipients contact

10 information in the event of errors or questions they may have about transactions

11 involving their card.  Chestnut Decl. Ex. 1, § 11.  Cardholders are also protected by

12 Regulation E and by the Bank's Zero Liability Policy, which are designed to protect

13 legitimate cardholders from liability for certain unauthorized transactions.

14        EDD chose to require magnetic stripe cards, and not chip cards, for its

15 prepaid card program; thus, as required by the contract and EDD's own

16 specifications, BANA issued EDD debit cards with magnetic stripe technology.

17 *See* Chestnut Decl. Ex. 2 at p. 5, #323 ("[t]he debit card shall contain no less than

18 an ISO 7811-compliant high coercivity magnetic stripe").[6]  Given the First

19 Amended Complaint's focus on chip cards, it is somewhat surprising that the First

20 Amended Complaint fails to acknowledge that EDD has publicly confirmed that it

21 chose not to require chip cards in its agreement with BANA.[7]  Nor does the First

22
23 [5] Bank of America, EDD Debit Card, https://visaprepaidprocessing.com/EddCard (last accessed Apr. 30, 2021) ("Avoiding Fraud").

24 [6] The contract between EDD and BANA was referenced in the First Amended
25 Complaint (*see* FAC ¶ 13), and is included as Exhibit 2 to the Chestnut Decl. submitted herewith.  *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1162-
26 63 (9th Cir. 2019) (a court may "consider a document 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiffs
27 claim.'").

28 [7] Kenny Choi, *Update: Outrage Mounts After Bank of America Denies Claims From Victims of EDD Bank Card Scammers*, CBS Local News (Nov. 9, 2020),

Amended Complaint allege any legal requirement to use chips (an unsurprising omission, as there is none).

## III.   THE COVID-19 PANDEMIC RESULTED IN UNPRECEDENTED LEVELS OF UNEMPLOYMENT AND WIDESPREAD FRAUD

Since March 2020, California has faced a global pandemic that has contributed to extraordinary levels of unemployment.  *Id.*  As a result, millions of Californians have applied to EDD for unemployment benefits, including those not traditionally eligible who now qualify for Pandemic Unemployment Assistance ("PUA") under the federal CARES Act.[8]  And, once approved, those claimants received their benefits on BANA-issued prepaid debit cards (if they have not chosen to receive them by check).

As has been widely reported, since shortly after the health and economic crisis hit the state, there has been an explosion of fraudulent activity directed at the EDD program.  This unprecedented and massive fraud has been widespread, as the First Amended Complaint freely acknowledges.  *See*, *e.g.*, FAC ¶ 19.

Primarily, the fraud has stemmed from what is known as "enrollment fraud"—false applications for benefits by non-Californians, criminals, prisoners, and by many others who are not entitled to any unemployment relief.  The "overwhelming majority" of this fraud is associated with federal PUA claims, "due

---

https://sanfrancisco.cbslocal.com/2020/11/09/outrage-mounts-after-bank-of-america-denies-claims-from-victims-of-edd-bank-card-scammers/ ("Providing chip technology is a rather new offering and was not included in the current contract with Bank of America to provide debit card services for Unemployment Insurance (UI) claimants")

[8] *See* Ca. Empl. Dev. Dep't, *Pandemic Unemployment Assistance*," https://edd.ca.gov/about_edd/coronavirus-2019/pandemic-unemployment-assistance.htm (PUA benefits available to individuals "who are not usually eligible for regular Unemployment Insurance (UI) benefits . . . including business owners, self-employed workers, independent contractors, and those with a limited work history who are out of business or have significantly reduced their services as a direct result of the pandemic.") (last accessed Apr. 30, 2021).

to federal policymakers' decision to prioritize immediate assistance" and thus require "a lower standard of identity and wage information than under the existing UI program."[9]  EDD, which is responsible for making eligibility determinations and approving benefits claims, has confirmed that it paid between \$11 billion and \$31 billion to fraudulent claims.  *See* January 25, 2021 ABC7 News Article.

Another aspect of the rampant fraud targeting the EDD program has arisen is a type of fraud referred to as "double dipping," after a card has been issued.  Under federal law, cardholders who believe that an error occurred on their cards—such as an unauthorized withdrawal transaction like those alleged by Plaintiffs Chong and Moore (FAC ¶¶ 22, 30)—can submit a "notice of error" to the debit card issuer.  15 U.S.C. § 1693f(a).  If a card issuer is unable to complete its investigation of the error claim within 10 business days, it is required under the Electronic Funds Transfer Act[10] and its implementing regulation, Regulation E ("Reg E"), to grant a provisional credit to the account, which makes the disputed funds available on the debit card pending the completion of any investigation.  *See* 15 U.S.C. § 1693f(c); 12 C.F.R. § 1005.11(c).

Unfortunately, criminals have tried to game this dispute resolution system as well by committing "double dipping" fraud.  When a criminal applies for benefits and obtains a card, criminals can and do file false notices of error in order to obtain provisional credits, which they then withdraw before the investigation concludes and the provisional credit can be reversed.  While EFTA and Reg E exclude criminals from their protections,[11] the problem, of course, is that they pose as legitimate cardholders.

Enrollment fraud and double dipping (among other species of misconduct)

---

[9] *Legis. Analyst's Office, Legislative Oversight of Ongoing Challenges at EDD* 5, (Jan. 26, 2021), https://lao.ca.gov/handouts/state_admin/2021/EDD-Challenges-012621.pdf.
[10] 15 U.S.C. § 1693, *et seq.*
[11] 15 U.S.C. § 1693a(12)(B); 12 C.F.R. § 1005.2(m).

have become pervasive in the past year and have required a substantial response by EDD and by BANA (in its role as the provider of EDD debit cards)—working together and individually.  As alleged in the First Amended Complaint or publicly reported, these efforts have included additional identity verification, freezing suspect card accounts, and enhanced antifraud measures.[12]  FAC ¶ 21.

## IV.   PLAINTIFFS CHONG AND MOORE

Plaintiffs Chong and Moore are EDD cardholders.  FAC ¶¶ 5–6, 12.  In July 2020, each Plaintiff reported suspected fraudulent activity related to their EDD Debit Cards and accounts.  FAC ¶¶ 22–23, 30–31.  BANA issued provisional credits to both Plaintiffs' accounts in the amount each had reported having lost through unauthorized transactions.  *Id.* ¶¶ 24–25, 32–33.  Plaintiffs allege that in October 2020, BANA reversed the credit on the Chong account "to prevent improper access to unemployment benefits" in the program (*id.* ¶ 27), and froze and removed the credit on the Moore account.  *Id.* ¶¶ 34–35.  In reversing the credits, BANA separately notified both Plaintiffs that it "believe[d] the account or the claim have been the subject of fraud or suspicious activity," but that Plaintiffs could "request that [Bank of America] reopen your claim for further consideration." Daniels Decl. ¶ 8, Exs. 1 & 2.

Plaintiff Chong contacted BANA on October 14, 2020 to reopen his claim, Daniels Decl. ¶ 8, but this suit was filed before the reconsideration process was completed.  Plaintiff Moore likewise contacted BANA on October 12, 2020 to reopen her claim, *id.* ¶ 7, but Plaintiffs nonetheless filed this suit before the reconsideration process was completed.  The reconsideration process nevertheless continued, and BANA restored the credits to both Plaintiffs' accounts in early December 2020.  Daniels Decl. ¶¶ 9 & 10, Exs. 3 & 4.  Plaintiff Chong was

---

[12] News Release, EDD, *EDD Provides Updates on Unemployment Benefit Fraud and Fraud Prevention Efforts* 1, (January 25, 2021), https://edd.ca.gov/about_edd/pdf/news-21-05.pdf

credited the $1,000 that is the subject of his allegations.  FAC ¶ 29; Daniels Decl. ¶ 9.  Plaintiff Moore was credited the $1,482 that is the subject of her allegations.  Daniels Decl. ¶ 10.

## **LEGAL STANDARD**

BANA moves to dismiss due to lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

A complaint should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) if there is no "live" controversy or the plaintiff has not suffered an injury in fact and therefore has no standing.  *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980); s*ee Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  In ruling on a Rule 12(b)(1) motion based on mootness or standing, this Court may "rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).  "'[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.'" *Asarco LLC v. Shore Terminals LLC*, No. C 11-01384 WHA, 2011 WL 6182123, at *2 (N.D. Cal. Dec. 13, 2011) (quoting *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir.1996)).  Rather, the allegations "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)

(quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

**ARGUMENT**

**I.    PLAINTIFFS FAIL TO STATE A NEGLIGENCE CLAIM (COUNT 1)**

Plaintiffs' negligence claim alleges that BANA breached a duty to cardholders by (1) failing "to take reasonable security precautions to prevent EDD Cards from being copied by thieves" by using magnetic stripe cards to distribute unemployment benefits, rather than using cards with embedded EMV chips; and (2) failing to take reasonable steps to timely and adequately investigate and respond to claims of fraud by instituting wholesale account freezes and reversing credits issued to cardholder accounts.  FAC ¶¶ 53, 58.  Plaintiffs have not stated a claim under either theory.

**A.    THE ECONOMIC LOSS DOCTRINE PRECLUDES PLAINTIFFS' NEGLIGENCE CLAIM**

As an initial matter, Plaintiffs' negligence claim is completely barred by the economic loss doctrine, which provides that plaintiffs asserting negligence claims ordinarily may not recover purely economic damages unconnected to physical injury or property damage, unless they allege a "special relationship," which they have not done here.  *Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*, 315 F. App'x 603, 605 (9th Cir. 2008); *see also Widjaja v. JPMorgan Chase Bank*, No. CV 19-7825-MWF-AFM, 2020 WL 2949832, at *8 (C.D. Cal. Mar. 31, 2020) ("plaintiffs may recover in tort for physical injury to person or property, but not for 'purely economic losses that may be recovered in a contract action.'") (quoting *Lusinyan v. Bank of Am.*, No. CV-14-9586 DMG (JCX), 2015 WL 12777225, at *4 (C.D. Cal. May 26, 2015)).  Thus, for example, a negligence claim against a bank based on improper withdrawals from an account must be dismissed where the plaintiff seeks only purely economic losses, not physical injury to person or property.  *See Smith v. Visa U.S.A., Inc.* No. C 11–01634 SI, 2011 WL 2709819, at *1-2 (N.D. Cal. July 12, 2011) (dismissing under the economic loss doctrine a tort

claim based on defendant's failure to exercise reasonable care in securing a plaintiff's personal information from hackers); *Barvie v. Bank of America, N.A.*, No. 18-CV-449-JLS (BGS), 2018 WL 4537723, at *5 (S.D. Cal. Sept. 21, 2018); *see also Widjaja*, 2020 WL 2949832, at *8 ("Multiple courts have applied the economic loss rule to bar a plaintiff's claim against a bank arising from fraudulent activity."). Here, Plaintiffs assert only economic losses. *See* FAC ¶ 61. Their negligence claim must therefore be dismissed.

## B. THE FIRST AMENDED COMPLAINT ALLEGES NO FACTS TO SUPPORT A TORT LAW DUTY OWED BY BANA TO PLAINTIFFS

Second, the First Amended Complaint fails to allege the existence of any tort law duty owed to the Plaintiffs. A plaintiff must establish all four required elements to state a claim for negligence under California law: (1) the existence of a legal duty to exercise due care, (2) breach, (3) causation, and (4) damages.[13] *See, e.g.*, *Ruiz v. Gap, Inc.*, 380 F. App'x 689, 691 (9th Cir. 2010).

### 1. THERE IS NO DUTY TO PROVIDE EMV CHIPS

As Plaintiffs acknowledge, EDD retained BANA to distribute EDD funds by debit card to those recipients identified by EDD. FAC ¶ 13. Under these circumstances, California courts have been unwilling to impose a duty of care on entities retained by a third party to provide financial services to individual recipients, particularly where the provider already has independent obligations to the third party who arranged for the delivery of those services. *See Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 837–841 (2019) (holding that company hired by employer to administer payroll did not owe a tort law duty of care to employees). The concern evinced in *Goonewardene*, that a tort duty to an employee would conflict with the defendant's contractual obligations to the employer, is fully

---

[13] As discussed below in Section III(B), Plaintiffs also cannot demonstrate that they have suffered any damages because they were fully reimbursed in December 2020.

present here.  *Id.* at 837.  Plaintiffs complain that the debit cards EDD contracted

with the Bank to provide do not contain "chips."  But EDD confirms that it chose

magnetic stripe technology and did not require chip cards in its contract with

BANA.  November 9, 2020, CBS Local News Article ("Providing chip technology

is a rather new offering and was not included in the current contract with Bank of

America to provide debit card services for Unemployment Insurance (UI)

claimants").  Indeed, the contract—which incorporates EDD's own RFP— specifies

the use of magnetic stripe technology and makes no mention of EMV chips.

Chestnut Decl. Ex. 2 at 5, #323 (citing requirement for magnetic stripe technology).

Further, the imposition of a separate tort law duty to cardholders would not

only conflict with the EDD Agreement, it would be entirely unnecessary to protect

cardholders' interests where BANA has also entered into an Account Agreement

with each cardholder containing numerous protections, but containing nothing

about the specific type of card or implementing technology.  *See Goonewardene*, 6

Cal. 5th at 839 (noting that, where there are avenues for recovery under other legal

theories, "the imposition of a separate tort duty of care on a payroll company is

generally unnecessary to adequately protect the employee's interests").

Nor does the First Amended Complaint allege any facts that would justify the

recognition of a new tort law duty in this context.  *See id.* at 838 (discussing factors

relevant to the recognition of a new tort duty as set forth in *Biakanja v. Irvin*, 49

Cal. 2d 647, 650 (1958)).  Instead, the First Amended Complaint just nakedly

asserts that BANA had a duty of care and that this duty was breached.  FAC ¶¶ 54–

55.  That conclusory assertion of law, which does nothing more than parrot the

elements of a negligence claim, is insufficient to satisfy Rule 8(a)'s pleading

requirements.  *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 681.

## 2.   PLAINTIFFS HAVE NOT ALLEGED ANY DUTY
## OUTSIDE OF THE PARTIES' CONTRACT

Plaintiffs argue that BANA breached its duty "to take reasonable steps to

timely and adequately investigate and respond to claims of fraud" by instituting account freezes and reversing credits to cardholder accounts.  FAC ¶ 58.  But to successfully state a negligence claim, Plaintiffs must allege an independent legal duty that is distinct from any duties or obligations arising out of the alleged contract.  *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (1994).  Here, Plaintiffs expressly acknowledge the existence of an Account Agreement (FAC ¶ 73), which already establishes the procedures for an investigation (Chestnut Decl. Ex. 1, §§ 9-11) and likewise expressly permits BANA to freeze an account, if necessary.  *Id.* § 2 ("If we suspect irregular, unauthorized, or unlawful activities may be involved with your Account, we may 'freeze' (or place a hold on) the balance pending an investigation of such suspected activities.  If we freeze your Account, we will give you a notice required by law.").  Thus, Plaintiffs fail to establish an independent tort duty separate and apart from the contract and therefore fail to state a negligence claim.

### C.   ANY HARM TO PLAINTIFFS WAS CAUSED BY THIRD PARTY CRIMINAL ACTORS

Plaintiffs' negligence cause of action also fails because it seeks to hold BANA liable for failing to anticipate and prevent the illegal acts of third-parties whose fraud on the California unemployment program led to the freezing of some unemployment benefit cards.

As a general rule under California law, one owes "no duty to control the conduct of another" and therefore cannot be held liable for failing to prevent harm caused by a third person.  *Tarasoff v. Regents of Univ. of California*, 17 Cal. 3d 425, 435 (1976).  Plaintiffs' negligence cause of action is barred based on a straightforward application of this well-established principle.  The First Amended Complaint seeks to hold BANA liable in tort for failing to take action (by supposedly adopting a particular debit card technology) to prevent criminals from causing the losses of which they complain.  FAC ¶¶ 15–19.  But Plaintiffs have

1   alleged no facts suggesting that BANA has a tort duty to anticipate, prevent, or

2   control the conduct of these sophisticated and nefarious criminals.  Plaintiffs also

3   have not alleged that BANA had either the duty or clairvoyance to anticipate the

4   types, scope, and intensity of fraud linked to a once-in-a-century pandemic

5   followed by an unprecedented expansion of unemployment benefits, so as to

6   require BANA to implement measures that its contract with EDD did not require.

7           The only recognized exception to the *Tarasoff* principle applies when a

8   defendant had a "special relationship" with the victim of the third-person's

9   conduct—such as a doctor-patient or therapist-patient relationship—that required

10  the defendant to intervene to prevent harm caused by a third person.  *Id*. at 435–

11  436.  Whatever the reach of that exception, it is surely not implicated here, as the

12  First Amended Complaint nowhere alleges that BANA had a "special relationship"

13  with Plaintiffs that would support a viable negligence claim.

14          BANA cannot be held liable to Plaintiffs in tort for failing to anticipate and

15  prevent harm caused by criminal third-parties.

16  **II.    PLAINTIFFS HAVE NOT STATED A CLAIM UNDER THE**

17  **CALIFORNIA CONSUMER PRIVACY ACT (COUNT 4)**

18          Contrary to Plaintiffs' assertion, the CCPA does not "impose[]" a duty on

19  businesses, but rather incorporates "[e]xisting law requir[ing] a business . . . to

20  implement and maintain reasonable security procedures and practices appropriate to

21  the nature of the information . . . ."  Senate Judiciary Committee Report on A.B.

22  375 (June 25, 2018), at 5 (citing Cal. Civ. Code § 1798.81.5(b) & (c)).  All that the

23  CCPA does is create a right of action where a business breaches an existing duty to

24  implement and maintain reasonable procedures.  Cal. Civ. Code § 1798.100(e).  But

25  there is no existing duty on financial institutions to issue cards with EMV chips

26  instead of magnetic stripes, as Plaintiffs try to allege in the First Amended

27  Complaint.  As discussed above at Section I(B)(1), the scope of a bank's duty to

28  cardholders is governed by the account agreement with its customer, and the

Account Agreement between BANA and Plaintiffs is silent on the type of card to be issued. *See generally*, Chestnut Decl. Ex. 1. The absence of any duty is also confirmed by the EDD Agreement, which specifically provides for the use of magnetic stripe technology. *See* Chestnut Decl. Ex. 2 at 5, #323 ("[t]he debit card shall contain no less than an ISO 7811-compliant high coercivity magnetic stripe"). Instead of imposing liability for violation of an existing duty, Plaintiffs' CCPA claim asks this Court to create a new duty, one that would prohibit any institution in the State from issuing cards that do not have EMV chip technology. There is no support for such a claim and no basis for a federal court to create one. The CCPA claim must be dismissed.

## III. THE BREACH OF CONTRACT CLAIM FAILS (COUNT 3)

### A. THE COURT LACKS SUBJECT MATTER JURISDICTION

As a threshold matter, the Court lacks jurisdiction over Plaintiffs' breach of contract claim, which is based on the alleged violation of the "Zero Liability" provision of the Account Agreement. FAC ¶ 73. Plaintiffs assert BANA breached that provision because they did not receive reimbursement (or timely reimbursement) for allegedly unauthorized transactions on their account. *Id.* ¶ 75. However, both Plaintiffs were fully reimbursed for the amounts of the subject transactions months before they filed their First Amended Complaint, thereby rendering this dispute moot and depriving Plaintiffs of standing to assert a breach of contract claim.

Subject matter jurisdiction requires the existence of a live dispute as well as a plaintiff with standing. *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. at 396; *Lujan*, 504 U.S. at 560. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). This requirement must be satisfied at the time the case is filed *and* throughout the pendency of the action; absent a live controversy, an action must be dismissed as non-justiciable. *Lewis v. Continental*

1   *Bank Corp.*, 494 U.S. 472, 477–478 (1990).  Standing requires that a plaintiff (1)

2   suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the

3   defendant, and (3) that is likely to be redressed by a favorable judicial decision.

4   *Lujan*, 504 U.S. at 560–561; *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*

5   *(TOC), Inc.*, 528 U.S. 167, 180–181 (2000).  Plaintiffs bear the burden of showing

6   that these requirements are satisfied.  *Lujan*, 504 U.S. at 561; *Arris Grp., Inc. v.*

7   *British Telecomms. PLC*, 639 F.3d 1368, 1373 (Fed. Cir. 2011); *FW/PBS, Inc. v.*

8   *City of Dallas*, 493 U.S. 215, 231(1990).

9        Here, Plaintiffs cannot establish either a live controversy or standing with

10  respect to their contract claim, as they were both fully credited with the disputed

11  funds months before they filed the First Amended Complaint.[14]  There is no "actual

12  controversy" because the relief Plaintiffs seek—reimbursement of the allegedly

13  unauthorized transactions on their accounts—has already been received, and there

14  is nothing more they are asking from this Court.  *Campos v. Fresno Deputy*

15  *Sheriff's Association*, 441 F. Supp. 3d 945, 954 (E.D. Cal. February 27, 2020 ) (as

16  plaintiff already received the relief requested "the Court cannot give him any other

17  effective relief" and the case was rendered moot).  Likewise, Plaintiffs have

18  suffered no injury in fact where they have been fully reimbursed and have therefore

19  suffered no loss that is traceable to BANA's conduct.  *Becker v. Skype Inc.*, No.

20  5:12-CV-06477-EJD, 2014 WL 556697, at * 3 (N.D. Cal. Feb. 10, 2014) (customer

21  who received a refund had no injury in fact and lacked Article III standing).  And to

22  the extent Plaintiffs' contract claim is based on the *timing* of their reimbursement

23  (*i.e.*, that they should have received it earlier), that is not an injury "likely to be

24  redressed by a favorable judicial decision," *Lewis*, 494 U.S. at 477, where the

25  Account Agreement limits BANA's liability to the amount of the allegedly

26

27  ─────────────

28  [14] It is notable that the First Amended Complaint only vaguely acknowledges that
    Chong was reimbursed (FAC ¶ 29) and doesn't plead it at all for Moore, even
    though both were fully reimbursed in December 2020.

unauthorized transaction. Chestnut Decl. Ex. 1, § 9; *Becker*, 2014 WL 556697, at *3.

## B.   PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED A BREACH OR DAMAGES

To state a claim for breach of contract, the complaint must allege that a valid contract existed between the parties, that the defendant breached the terms thereof, the facts constituting the breach, and that damages resulted from such breach. *Hatteras/Cabo Yachts, LLC v. M/Y EPIC*, 423 F. Supp. 3d 181, 189 (E.D.N.C. 2019).[15]  Even if Plaintiffs had standing to bring a contract claim in the absence of any cognizable injury, that claim still fails for two reasons.  First, there is no breach of the "Zero Liability" provision (Chestnut Decl., Ex. 1, § 9) where Plaintiffs have been fully reimbursed and therefore have incurred no liability for the disputed charges.  *See, e.g.*, FAC ¶ 29; *Defeat The Beat, Inc. v. Underwriters At Lloyd's London*, 194 N.C. App. 108, 115, 669 S.E.2d 48, 53 (2008) (granting summary judgment in favor of defendants where plaintiff failed to set forth specific facts that it incurred any expenses and costs in excess of the amount that defendants had already paid).  And second, as discussed above, there are no damages resulting from any alleged breach involving how or when the reimbursements were made, as the Account Agreement limits BANA's liability to "the face amount of any unauthorized card transaction covered by this policy" and specifically excludes "any claims of special, indirect or consequential damages."  Chestnut Decl. Ex. 1, § 9; *Blaylock Grading Co., LLP v. Smith*, 189 N.C. App. 508, 510, 658 S.E.2d 680 (2008) (reversing award of damages that exceeded amount permitted by limited liability provision); *Naik v. HR Providence Rd., LLC*, 190 N.C. App. 822, 662 S.E.2d 36 (Table) (2008) (holding that ordering specific performance where contract does not permit it "would be tantamount to rewriting the contract between

---

[15] The Account Agreement is governed by North Carolina Law.  Chestnut Decl. Ex. 1, § 18.

1   Plaintiff and Defendant to create new contractual duties.").

2        For these reasons, Count 3 of the First Amended Complaint should be

3   dismissed.

4   **IV.   PLAINTIFFS HAVE NOT STATED A CLAIM FOR BREACH OF**

5        **IMPLIED DUTY OF COMPETENCE (COUNT 5)**

6        Plaintiffs allege BANA was required to perform its obligations under the

7   Account Agreement "competently and with reasonable care," and that BANA

8   breached the duty by "failing to use EMV chips in its EDD cards" and by "failing

9   to implement an effective claims resolution process."  FAC ¶¶ 87-89.

10        Again, as the Account Agreement is governed by North Carolina law, North

11   Carolina likewise governs whether the contract contains any such implied duty.

12   Chestnut Decl. Ex. 1, § 18.  However, North Carolina courts do not recognize the

13   implied duty of competent performance in a contract context, as Plaintiffs have

14   pleaded it.  FAC ¶¶ 87-89.  Rather, North Carolina recognizes a "duty to use

15   reasonable care in affirmatively performing the promise" only as grounds for a

16   negligence claim.  *Oates v. Jag, Inc*., 314 N.C. 276, 279, 280, 333 S.E.2d 222, 225

17   (1985) ("[T]he duty owed by a defendant to a plaintiff may have sprung from a

18   contractual promise made to another; however, the duty sued on in a negligence

19   action is not the contractual promise but the duty to use reasonable care in

20   affirmatively performing that promise.").  But, as discussed in Section I(A), any

21   negligence claim fails since it is precluded by the economic loss doctrine.  *See*

22   *Johnson v. Sprint Solutions, Inc.*, No. 3:08-CV-00054, 2008 WL 2949253, at *2

23   (W.D.N.C. July 29, 2008) (finding that plaintiff's negligence claim was barred by

24   the economic loss doctrine).  Even if California law were to apply, this claim still

25   fails because both the Account Agreement and EDD Agreement already contain the

26   purported obligations that Plaintiffs seek to enforce and Plaintiffs cannot create an

27   "implied duty" that expands the parties' contractual obligations.  *See Bulletin Mktg.*

28   *LLC v. Google LLC*, No. 17-CV-07211-BLF, 2018 WL 3428562, at *3 (N.D. Cal.

July 13, 2018) (granting motion to dismiss and finding that "the alleged implied duty does not exist because the contract at issue already expressly contains the purported obligation.").

With respect to the alleged duty to use EMV chips, as discussed above in Section I(B)(1), that duty is contained nowhere in the Account Agreement.  The EDD Agreement (which Plaintiffs cannot enforce in any event) also does not mention or require such chips, and instead specifies merely that the "debit card shall contain no less than an ISO 7811-compliant high coercivity magnetic strip." Chestnut Decl. Ex. 2 at 5, #323.  Plaintiffs cannot use an implied duty to expand or contradict BANA's obligations under already-existing contracts.  *Meineke Car Care Ctrs., Inc. v. RLB Holdings, LLC*, No. 3:08CV40-RJC, 2009 WL 2461953, at *11 (W.D.N.C. Aug. 10, 2009), *rev'd and remanded on other grounds*, 423 F. App'x 274 (4th Cir. 2011) ("A party cannot rely on [an] implied duty… to expand or otherwise contradict the express terms of a contract by claiming that some additional obligations existed."); *Glenn-Colusa Irrigation Dist. v. United States Army Corps of Eng'rs*, No. 2:17-CV-120 WBS CKD, 2019 WL 3231748, at *5 (E.D. Cal. July 18, 2019) (implied duty "cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions").

With respect to the alleged duty to "implement an effective claims resolution process," the Account Agreement already sets forth the processes that the parties agreed upon.  Chestnut Decl. Ex. 1, §§ 9-10.  To the extent that Plaintiffs are asserting a breach of those provisions, that is a claim that should be (and has been) asserted under the Account Agreement.  *Performance Sales & Mktg., LLC v. Lowe's Companies, Inc.*, No. 5:07CV140, 2010 WL 2294323, at *11 (W.D.N.C. June 4, 2010) (dismissing claims for breach of implied duty as "duplicative" of breach of contract allegations); *Rezapour v. Earthlog Equity Grp., Inc.*, No. 5:12CV105-RLV, 2013 WL 3326026, at *4 (W.D.N.C. July 1, 2013) (noting that

courts construe claims for breach of contract and breach of implied covenant of good faith as "duplicative" if the claims arise from the same set of facts); *Green Crush LLC v. Paradise Splash I, Inc.*, No. SACV1701856CJCJDEX, 2018 WL 4940824, at *7 (C.D. Cal. Mar. 8, 2018) ("Because the implied covenant claims are duplicative of the breach of contract claims, they must be dismissed.").  And to the extent that Plaintiffs are seeking to use the implied duty to create additional obligations that do not exist in the Account Agreement, that effort must fail for the reasons already discussed.

## V.  PLAINTIFFS' EFTA CLAIM IS MOOT BECAUSE THE PLAINTIFFS HAVE BEEN CREDITED FOR THE FRAUDULENT CHARGES (COUNT 2)

Plaintiffs' EFTA claim is moot because both Plaintiffs have been fully credited for the amount of their allegedly unauthorized transactions.  Daniels Decl. ¶¶ 11-12.  EFTA and Reg E limit consumers' liability for unauthorized transactions if certain conditions are met.  *See* 15 U.S.C. § 1693g(a); 12 C.F.R. § 1005.6(b).[16] Plaintiffs assert that BANA violated these provisions by subjecting them to more than $50 in liability for unauthorized transactions on their accounts, based on their allegation that BANA "subjected Chong to $1,000 in liability and Moore to $1,482 in liability."  FAC ¶ 65.  But Chong admits that he was reimbursed.  *Id.* ¶ 29; *see also* Daniels Decl. ¶ 9.  Moore, too, was credited.  Daniels Decl. ¶ 10.  Thus, neither of them has incurred any liability for their allegedly unauthorized

---

[16] Plaintiffs cite to the Federal Reserve Board's 12 C.F.R. § 205 version of Regulation E, but rulemaking authority under EFTA generally transferred from the Federal Reserve Board to the Consumer Financial Protection Bureau ("CFPB") in July 2011 pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act.  The CFPB restated Regulation E at 12 CFR Part 1005 in December 2011.  Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 1084, 124 Stat. 1376, 2081–82 (2010) (codified as amended at 15 U.S.C. § 1693b (2018)).  BANA uses the current CFPB version of the regulation herein.

1  transactions and there is no "actual controversy" for this Court to decide.  *See infra*

2  Section III(A).

3        Plaintiffs' theory seems to be that BANA nevertheless violated EFTA and

4  Reg E because provisional credits were issued, and then debited, before Plaintiffs

5  eventually received full reimbursement for their claims.  FAC ¶ 66.  In other words,

6  they base their EFTA and Reg E claim on having been *temporarily* liable for the

7  unauthorized transactions during the period of time before BANA fully credited

8  their claims.  But Plaintiffs had zero responsibility for fraud against their cards and

9  have been credited for the full amount of their allegedly unauthorized transactions.

10  "[A] claim becomes moot when a plaintiff actually receives complete relief."

11  *Alecia Ballin v. Russ Bassett Corp. & Insperity PEO Servs.*, No. 17-CV-3981 PSG,

12  2017 WL 10527368 at *2 (C.D. Cal. Dec. 6, 2017); *see also Gunn v. Thrasher,*

13  *Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1072 (7th Cir. 2020) (finding that a

14  procedural violation of the Fair Debt Collection Practices Act without a concrete

15  injury did not confer standing).  Accordingly, there is no further relief that is

16  available to Plaintiffs under EFTA, and no justiciable case or controversy.[17]

17  **VI.  PLAINTIFFS HAVE NOT STATED A CLAIM UNDER THE UNFAIR**

18          **COMPETITION LAW (COUNT 6)**

19        Plaintiffs' claim under California's Unfair Competition law ("UCL") asserts

20  two theories.  First, Plaintiffs allege that BANA violated the "unlawful" prong of

21  the UCL by violating the CCPA and Reg E.  FAC ¶ 96.  Second, Plaintiffs allege

22  that BANA violated the "fraudulent" prong of the UCL because Plaintiffs' online

23  account history stated that the credited funds that BANA debited from their

24  accounts were listed as debited by the "State of CA EDD Unemployment" rather

25  than by BANA itself.  FAC ¶¶ 26–35, 81.  This is hardly a misstatement, as the

26

---

27  [17] That Plaintiffs have both been fully reimbursed also means that they have not

28  stated a claim under EFTA, as they have not incurred any liability in excess of what is permitted under 15 U.S.C. § 1693g and 12 C.F.R. § 1005.6.

subject debits from the EDD Card were, in fact, in connection with servicing EDD Debit Cards rather than from a merchant or other third party.  But even assuming the quoted language were somehow "deceptive" for UCL purposes, this claim fails with respect to both theories.

Plaintiffs' claim under the "unlawful" prong of the UCL fails as this prong prohibits business practices that are "forbidden by law," *Lopez v. Apple, Inc.*, No. 19-CV-04577-JSW, 2021 WL 823122, at *12 (N.D. Cal. Feb. 10, 2021), and Plaintiffs allege no violation of law that could sustain a successful UCL unlawful claim.  "In California, a UCL claim of any kind 'must identify the particular section of the statute that was violated, and must describe with reasonable particularity the facts supporting the violation.'"  *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2010 WL 2486353, at *6 (N.D. Cal. June 16, 2010) (dismissing UCL unlawful claim where plaintiffs failed to "plead with particularity how the facts of this case pertain to [a] specific statute").  Plaintiffs' allegations of predicate violations of EFTA, Reg E and the CCPA fail because the Bank's business practices either did not violate, or were expressly permitted by, those very statutes, as well as by the governing Account Agreement.  FAC ¶ 95.  *See supra* Sections II and V.

Plaintiffs' second theory fails for lack of any plausible pleading of materiality.  A plaintiff asserting a UCL claim premised on fraudulent conduct must allege that the misrepresentation was material—that it "was the cause of the Plaintiffs' alleged injuries."  *Giron v. Hong Kong & Shanghai Bank Co., Ltd.*, No. 2:15-CV-08869-ODW-JC, 2016 WL 6662726, at *6 (C.D. Cal. June 29, 2016); *see also In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 925 (C.D. Cal. 2012) (causation satisfied where a plaintiff alleges she was "motivated to act or refrain from action based on the truth or falsity of a defendant's statement").

The First Amended Complaint is silent as to why the identity of the organization that initiated the challenged debit—be it EDD or BANA—is material.

Plaintiffs do not allege that the supposedly false statement about the October 4 debit would have led a reasonable person to act or refrain from acting to their detriment, or even that it led Plaintiffs themselves to act or refrain from acting. Indeed, the allegedly false statements occurred simultaneously with the debiting of Plaintiffs' accounts, and thus it is unclear how those statements could possibly have caused the harm Plaintiffs claim to have experienced from the debit itself.

Any allegation of causation or materiality is particularly implausible given that the October 2 letters Plaintiffs admit they received from BANA clarified that the action had been taken because *BANA* "believe[d] the account or the claim have been the subject of fraud" and invited Plaintiffs to contact BANA if they had any questions or wished to reopen their claim for further consideration. Chong Oct. 2 Letter; Moore Oct. 2 Letter. Both Plaintiffs contacted BANA after receiving the October 2 letter, and Ms. Moore alleges she was told orally on October 12 that the debit had been made by BANA. FAC ¶ 37. These circumstances belie any notion that either Plaintiff was materially misled into doing something other than what he or she did to address the debit. As Plaintiffs fail to allege that any purportedly false information on their online accounts was material or caused harm, their UCL claim must fail to the extent it alleges "fraudulent" conduct.

For these reasons, Plaintiffs claim under the UCL should be dismissed.

## CONCLUSION

For all the foregoing reasons, Bank of America respectfully requests that the Court dismiss Plaintiffs' First Amended Complaint without further leave to amend.

Dated: April 30, 2021                    Respectfully submitted,

By: /s/ *Laura A. Stoll*
LAURA A. STOLL (SBN 255023)
*LStoll@goodwinlaw.com*
**GOODWIN PROCTER** LLP
601 601 South Figueroa Street, 41st Floor
Los Angeles, CA 90017
Tel.: +1 213 426 2500
Fax: +1 213 623 1673

DAVID R. CALLAWAY (SBN 121782)
*DCallaway@goodwinlaw.com*
**GOODWIN PROCTER** LLP
601 Marshall Street
Redwood City, CA 94063
Tel.: +1 650 752 3100
Fax: +1 650 853 1038

JAMES W. MCGARRY (*pro hac vice*)
*jmcgarry@goodwinlaw.com*
**GOODWIN PROCTER** LLP
100 Northern Avenue
Boston, MA 02210
Tel.: +1 617 570-1000
Fax: +1 617 523 1231

THOMAS M. HEFFERON (*pro hac vice*)
*thefferon@goodwinlaw.com*
**GOODWIN PROCTER** LLP
1900 N Street, N.W.
Washington, DC 20036
Tel.: +1 202 346 4000
Fax: +1 202 346 4444

BARRY W. LEE (SBN 088685)
*bwlee@manatt.com*
**MANATT PHELPS & PHILLIPS LLP**
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
Tel.: +1 415 291 7450
Fax: +1 415 291 7474

Attorneys for Defendant:
BANK OF AMERICA, N.A.